Good morning, Your Honor. Donald Cook for the appellant. Ms. Scallion, who is also present. In response to the court's order last week regarding Virginia v. Moore, I'll be submitting a Rule 26 letter with the citations, but Virginia stands for the proposition that so long as an officer has probable cause for any felony or misdemeanor offense, the officer may take that person into custody without violating the Fourth Amendment. for this felony or misdemeanor arrest for Fourth Amendment purposes, it's immaterial that state law did not authorize the custodial arrest. Virginia based its holding on essentially the common law as understood by the framers of the Fourth Amendment that since, at least as of on or about 1791, any criminal offense subjected the violator to a custodial arrest, and that original meaning would apply today. That holding has no application to Ms. Scallion's case. She was placed into a custodial arrest for an infraction, an offense unknown at common law created by statute in California in 1968, an offense that are not even considered a public offense, an offense that has no Plaintiff submits that the framers of the Fourth Amendment did not intend that the arrest power extend to what is in effect a non-criminal offense. The arrest power was meant for felonies, misdemeanors, which is not what an infraction is. Fraction is not at all comparable to a misdemeanor arrest. If your neighbor's failure to or excessive watering of his lawn causes a landslide, please can't go out and arrest you for that. Therefore, Virginia does not apply to this case. Turning to the arrest here, there was no probable cause for the arrest. The basis the defendants rely on, the alleged bicycle not having the license to ride a bicycle, was not a probable cause for the arrest. There is sufficient evidence to support an inference that at the time of the offense, neither officer observed any facts upon which they would rely on for that later asserted offense. It doesn't appear in their contemporaneous reports. It doesn't appear in a probable cause declaration. It wasn't even listed on the citation issued some hours later. There is a reasonable inference here that this was made up after the fact, perhaps after this lawsuit was filed, when defendants were represented by counsel. The search at the scene, the pat-down search, it begins immediately. Ms. Scallion is straddling her bicycle. The officers come out, approaches her and immediately begins patting her down, reaching into her pockets. That's not a search incident to an arrest. That's a search for, that's a pat-down search, reaching into pockets not supported by any reasonable suspicion of weapons or contraband. Then you have the search at the station, the strip search. The defense here is that, on the briefs, is that it's accidental. You go to Ms. Scallion's declaration, her testimony is, lifts the jacket above her breast, exposing her breast to the male jailer. She says, you know, can't you lower it? And the officer's response, it's not my fault that you're not wearing a bra. Then you have what Officer Newdeham told the internal affairs investigator, which is standard part of the booking search, to search around the areas of the breasts. And Hawthorne's response to the personnel complaint, which was, she was strip searched at the station, and Hawthorne's response was, it was exonerated, meaning the act did occur, but that it was justified. The defense claim is that, well, because they can come up with a theory as to why it was accidental, therefore, that justifies summary judgment. That, of course, violates the standard. What evidence other than that is there that Hawthorne has a policy of conducting this type of search in situations like this? You have both Officer Newdeham's statement at deposition that her actions were in accordance with policy. This was reflected in my declaration where I summarized it. You have the personnel complaint letter that went to the chief of police to investigate this incident, alleging specifically there was a responding, obviously, on behalf of the Hawthorne Police Department, finding that it's in accordance with department policy. That brings you squarely within Lorez versus the City of Los Angeles, where there's a personnel complaint to the LAPD chief. And then there's even the follow-up. After getting Sergeant Royer's letter, I sent another letter to the chief saying, look, this is what, or how I read the letter. The letter complained, the response is basically saying the acts did occur, but it was lawful, justified, and proper. But because the city always does strip searches in situations like this, or because there might be some other excuse or explanation for the officer's conduct? Well, because first from the response by the city to the letter, it's that the acts did occur, but it's in accordance with policy. It's an admission by the city that this is our policy. What policy? Is it the policy that officers don't get punished for accidents, or a policy to strip search every female inmate who's arrested for riding her bike without a headlight? I'm just trying to, you know, what is the policy that is the basis of the Minnell claim? Well, you have to go back first to my original complaint letter, which was alleging a strip search, intentionally exposing the breasts. And the entrance from that is, is that it's within the policy of the department. And when you look at the city's response, when you look at Officer Newnaham's statement to the IA investigator, which is, this was part of a standard booking search, the entrance from that is, is that yes, I did it, but I did it because that's the policy. Now, maybe from these facts, they can also claim maybe it really was accidental. But I think this evidence is more than enough to create the inference that the act did occur, that is, the strip search, and it was in accordance with the department policy. But you're not arguing that we must conclusively decide that. You just are arguing that those facts defeat summary judgment. Correct. That's the point, that there was enough evidence here to make a finding that, number one, it was an intentional strip search by Officer Newnaham, and number two, that she was doing it in accordance with department policy and the department approved of it. Unless there are further questions, I'd like to reserve the last two minutes I have for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Jill Babington, and I represent the appellees in this section. Let us be clear. In Virginia v. Moore, the Supreme Court recently held that all the Fourth Amendment requires for a warrantless arrest is probable cause. In Virginia v. Moore, they made no distinguishment between arrests for custodial or arrests for infractions versus arrests for criminal offenses, arrests for misdemeanor offenses versus an arrest for an offense that carries the threat of imprisonment. All right. Counsel, Mr. Cook indicated he was going to be submitting a 28J, and let's just turn that into each side submitting letter briefs, five pages on this issue, so that we can make sure that both sides get a chance to fully address the issue of Virginia v. Moore. You can move on to your other issues. Okay. Well, pursuant to the Court's holding in Virginia v. Moore, I mean, in this case, the evidence on the record establishes the probable cause existed to arrest Mrs. Scallion. Mrs. Scallion was riding her bicycle at 8 o'clock at night without a headlight. She admits she didn't have a headlight. The district court properly took judicial notice that the sun had set that night at 6.55 p.m. Pursuant to the California Vehicle Code, darkness is defined as any time from one-half hour after sunset until one-half hour before sunrise. Therefore, at 8 o'clock p.m. on September 19th, it was clearly dark for purposes of the vehicle. All right. Well, let's start with the Hawthorne Police Report. The arrest report says that they arrested her because she was riding her bicycle on the sidewalk, and she's supposed to be riding it in the street, and that she also wouldn't identify herself. It doesn't say anything about a headlight. Your Honor, the subjective intent of the officers plays no role in the probable cause analysis. The Supreme Court has held in United States v. Robinson and Devenpeck v. Allthorne that she was riding her bicycle on the sidewalk. So basically, in this case, she, because she admitted in her deposition she didn't have a headlight at the time, that justifies the arrest. Your Honor, as the Supreme Court held in United States v. Robinson, quote, the fact that the officer does not have the state of mind, which is hypothecated by the reasons which provide the legal justification for the officer's action, does not invalidate the action taken, as long as the circumstances viewed objectively, as we're viewing them today, justify the action.  But I'm saying, does it have to be at the time that they make the arrest, or can it be that later on during the course of the litigation, she admits that she didn't have her headlight, and then that applies retroactively to the arrest? Your Honor, I would submit that the evidence in the record that was submitted in support of the appellee's motion for summary judgment was that the officers, before they even approached Ms. Scallion, saw she was not riding her bicycle without a headlight and determined to pull her over at that time. And that's on the record at page 80 in Officer Newenham's declaration, where she says, having seen the individual commit at least one traffic violation, riding her bicycle without a headlight, I approached her to issue her a citation. Because that fact happened to be omitted from a probable cause declaration in the police report does not mean that when we look at the facts now Does it create an issue of that? I mean, this is an important question, because I understand all the law you're saying. I mean, I totally know that law, and so you don't have to keep repeating it. But for there to be probable cause, doesn't it have to be at the time of the arrest? And unless one of these citations that are in the actual citation is a reference to lack of headlights, there's no mention of it at the time of the arrest. But, Your Honor, that doesn't change the probable cause analysis. At the time of the arrest, there was probable cause. It was dark. She was riding her bicycle without a headlight. In Devenpeck v. Alford, that's all based on her statement during her deposition, right? That she was not riding her bicycle without a headlight. Correct. Those facts are undisputed. And in Devenpeck v. Alford, the Court noted that the problems that would be imposed by looking at an officer's subjective intent when analyzing probable cause is that an arrest made by a knowledgeable veteran officer would be valid, whereas an arrest made by a rookie officer in precisely the same circumstances would not. That holding is directly applicable to the facts of this case, simply because Officers Newenham and Descant omitted from their police report in the probable cause declaration the fact that Ms. Scallion was riding her bicycle without a headlight doesn't invalidate the arrest. Okay. Why don't we move to the strip search? Okay. The strip search, as the district court correctly pointed out, first the court looked to how did Mrs. Scallion herself testify about the strip search in her deposition. In her deposition, Ms. Scallion said, in the context of having her belly button ring removed, Ms. or Officer Newenham came up from behind me to see what was going on. I guess to assist me in removing it, she pulled my shirt, my jacket, whatever that I was wearing up to, you know, see why I couldn't do it. That's the factual basis for Ms. Scallion's claim she was subjected to a strip search. An officer coming over and lifting a baggy jacket, Ms. Scallion admits she was wearing a baggy jacket under which one would reasonably expect to find a bra or a shirt. She lifted it up to help her remove her belly button ring. That's not sufficient evidence to qualify as a strip search under California Penal Code Section 4030, which requires, which provides that a strip search is a, quote, search which requires a person to remove or arrange some or all of the clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such a person. Isn't that what happened here? She, I mean, once, I mean, I could see the accidental lifting was too high, but she asked her to move the shirt down. And she didn't do that. And she did. And the evidence on the record, Your Honor, says that that's exactly what the officer did. Ms. Scallion admits her shirt wasn't held up. Isn't there a dispute in the record on that? There is no dispute, Your Honor. Your Honor, in support of the motion for summary judgment, we relied exclusively on Ms. Scallion's own deposition testimony. Her shirt was held up momentarily, during which time her breasts were exposed, and Officer Newenham purportedly said, it's not my fault you're wearing a bra, and dropped her jacket. You're not wearing a bra. It's not my fault you're not wearing a bra and left your jacket up. That's the testimony. Correct. And that allowed various people in the booking room to visually inspect Ms. Scallion's breasts. No, Your Honor. The evidence on the record, Ms. Scallion testifies she has no knowledge of anyone that saw her. In fact, the two jailers that she refers to, the male jailers, she says were behind her. Her own testimony, Your Honors, she has no evidence that anybody else happened to see her breasts other than her and Officer Newenham. Isn't Officer Newenham enough to constitute a strip search? But that, according to Ms. Scallion's own testimony, that's not why Officer Newenham was coming to, Officer Newenham wasn't coming as defined by. That subjective motivation doesn't matter. It's what she did, right? Well, under the penal code, it said a strip search requires a person to remove or arrange their clothing so as to permit a visual inspection of their underclothing, breasts, buttocks, et cetera. That's a strip search. Officer Newenham came over so as to help her remove her belly button ring. Why did she then say reportedly to, I guess, Sergeant Royer, that this was part of a standard booking search? Even if we were to consider the evidence from the Internal Affairs Investigation Report that Officer, I mean, which is multiple levels of hearsay at best, that Officer Newenham's own statement is reported by somebody else, is set forth in a subsequent Internal Affairs Investigation Report. But even if we were to consider that, as the District Court correctly noted, all that she was doing, pardon me, even if she were to have lifted up Ms. Scallion's jacket to examine the breast area for contraband, that does not lead to the conclusion in and of itself that Officer Newenham was conducting a strip search, that she wanted to look at Ms. Scallion's bare breasts or her bra. As the District Court correctly concluded, given the attire that Ms. Scallion was wearing, a baggy jacket, it was reasonable for an officer to believe that underneath that jacket she had some sort of underclothing. Well, one of the things that's troubling me about this record is that you have the City Internal Affairs Sergeant and so forth saying that everything was done according to policy. And what I'm having a hard time figuring out is what was done according to policy. Was the inspection to remove the belly button ring pursuant to policy and then there was just an accidental exposure of the breasts, or was the exposure of the breasts pursuant to policy? And how can we, since we're reviewing summary judgment, conclude as a matter of law that we know what that means? Your Honor, I see my time is up. May I briefly respond? Of course. First, with respect to the City saying everything was done according to policy, the District Court correctly noted that this is based on some statement by Sergeant Royer. There's no evidence on the record that Sergeant Royer had the final decision-making power as is required to establish a longstanding custom practice or policy under Monel and Gillette v. Delmore. Therefore, Sergeant Royer's statement in a letter to counsel which says that it was done according to practice does not establish a custom practice or policy. Well, I mean, that was kind of the reasoning behind the question I asked counsel. But assuming that we get past that, I'm still puzzled as to how we can tell from this record what act or what course of conduct was being validated. Well, Your Honor, that's in fact was one of the problems with Ms. Scallion's case in the District Court where, you know, as motion for summary judgment comes up, it's not my job to guess as to what they're alleging is an improper practice, a custom practice or policy. When I'm drafting a motion for summary judgment, I look at the evidence that they've presented thus far, and the evidence that they've presented, which is, one, their only circumstance of the alleged strip search, and two, Sergeant Royer's statement, that is insufficient to establish Monel liability at the motion for summary judgment stage. So the ambiguity works in your favor in this case is what you're saying. Correct, Your Honor. Okay. Thank you, counsel. Thank you. Thank you. The law has not changed that at the time that an officer makes an arrest, the officer must have facts in mind that are later relied on for a probable cause for the arrest. There's sufficient evidence to support an inference that the facts of the headlight violations were not in mind of the officers when they made this arrest. With regard to the strip search, Ms. Scallion testified she was standing in front of the booking cage, and there was a booking officer, a male officer, right on the other side in a window when her breasts were exposed, and that Officer Newdaham kept the jacket up above the level of her nipples, notwithstanding Ms. Scallion's obvious complaint about wanting to be able to cover up. And then, of course, you go back again to what Officer Newdaham told the Sergeant Royer. There's sufficient evidence to support that her breasts were intentionally exposed as part of a booking search. Judge Fogel's last question to Appley's counsel, in the complaint letter that I sent, page 170 of the excerpts, one of the complaints was, one or more Hawthorne officers forced Ms. Scallion to expose her breasts allegedly as part of a booking search. In her IA statement, Officer Newdaham is questioned specifically about the searching of Ms. Scallion's breasts. Obviously, the inference is in response to this complaint, and she states it's part of a standard booking search. Sergeant Royer sends a response letter stating that the complaint of Axe did occur, and one of the complaints of Axe was searching Ms. Scallion's breasts, exposing her breasts as part of a booking search. Sergeant Royer concluded it's in accordance with department policy, lawful and justified. And then I sent my second letter saying, this is what you guys say. I hear no response. And with that, I will sit down. Thank you. Thank you. With that, Scallion v. Hawthorne is submitted. U.S. v. Amaran is submitted on the briefing. And we will hear from counsel on Ramirez v. Marano v. Murkowski.
judges: Wardlaw, Ikuta, Fogel